### 66931. OAKES v. BLUE CROSS BLUE SHIELD OF COLUMBUS, INC.

CARLEY, Judge.
Appellant purchased from appellee a major medical insurance policy which covered appellant's wife. Thereafter, appellant sought to recover benefits under the policy in connection with certain medical expenses incurred by appellant's wife. Appellee refused to pay the

claim and declared the policy to be void because of alleged material misrepresentations made by appellant in his application for insurance. Appellant brought suit to recover benefits allegedly due under the policy, and a jury trial was held. At the close of the evidence, the trial court directed a verdict in favor of appellee on the basis of appellant's material misstatements. Appellant appeals, asserting that there were issues of fact to be resolved by the jury.

1. " 'In order to void a policy of insurance for a misrepresentation in the application, the insurer must show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk. [Cit.] A material misrepresentation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance. [Cit.]' [Cit.]' "Whether misrepresentations are material is ordinarily a question for the jury; but where, . . ., the evidence excludes every reasonable inference except that they were material, no issue is presented upon that point for determination by the jury." [Cit.]' [Cit.]" *Ga. Intl. Life Ins. Co. v. Bear's Den, Inc.*, 162 Ga. App. 833, 838 (292 SE2d 502) (1982).

In the instant case, appellant's alleged misrepresentations concerned his wife's medical history. When filling out the application for insurance, appellee's agent asked appellant about previous incidents of illness and about prior hospitalizations of the prospective insureds. Appellant told the agent of two occasions on which his wife had been hospitalized for surgery. However, subsequent to the issuance of the policy, appellee discovered that appellant's wife had been hospitalized for various ailments and operations no less than 15 times in the past 12 years alone. There was substantial evidence that appellee would not have issued the policy covering appellant's wife if it had been aware of her extensive history of medical problems. Thus, the evidence demanded a finding that appellant's omissions in this regard were material to appellee's acceptance of the risk. *Phillips v. Old Republic Life Ins. Co.*, 155 Ga. App. 537 (271 SE2d 676) (1980).

Appellant asserts that, even if he failed to mention all of his wife's illnesses to appellee, the information he supplied was "complete and true to the best of [appellant's] knowledge and belief," as required by the terms of the application for insurance. However, OCGA § 33-24-7 (b), pursuant to which a recovery on an insurance policy may be precluded in certain instances, applies to "incorrect statements" as well as to "misrepresentations, omissions, [and] concealment of facts."

"[I]t is clear that, although [OCGA § 33-24-7 (a)] provides that statements in the application are deemed to be representations and not warranties, misstatements or misrepresentations are treated as warranties, for the purpose of preventing a recovery under the policy,

when they come under any one of the three criteria in [OCGA § 33-24-7 (b)]. That actual knowledge of their falsity is not required to prevent a recovery, is plainly seen by the fact that this is only one of the three criteria, i.e., '(1) Fraudulent.'" *United Family Life Ins. Co. v. Shirley*, 242 Ga. 235, 238 (248 SE2d 635) (1978). Thus, appellant's responses to the questions on the application constituted misstatements even if made in good faith. See *Washington v. Interstate Fire Ins. Co.*, 163 Ga. App. 15 (293 SE2d 485) (1982). The materially incorrect information given to appellee by appellant was sufficient to preclude a recovery under the policy pursuant to OCGA § 33-24-7 (b) (2) and (3).

2. Appellant asserts that there was a jury issue as to the negligence or fault of appellee's agent in filling out the application for insurance. Appellant relies on *United Ins. Co. of America v. Hodges*, 161 Ga. App. 146 (291 SE2d 50) (1982), in support of this contention. In *Hodges*, an insurance agent orally advised an applicant for insurance covering her father's life that "all that was necessary [was] for her to answer the questions to the best of her knowledge and belief and the insurance policy would be issued to her." *United Ins. Co. of America v. Hodges*, supra at 147. The applicant told the agent that she had not seen her father recently, that she did not know whether or not her father had any medical problems, and that she could not swear that he was not ill. Upon receiving that information, the agent answered "no" to the questions on the application concerning the father's illnesses. This court held that those facts presented a jury question as to whether the insurer was estopped to deny coverage because of the fraud, misconduct or negligence of its agent.

Unlike the situation in *Hodges*, however, there is no evidence in the instant case that appellee's insurance agent knowingly inserted false answers in the application after he had been given correct answers by the applicant for insurance. Appellant testified that, as far as he could remember, he answered all of the insurance agent's questions as well as he could, but that he could not remember what he had told the agent. He did not know what the agent had written on the application, since he did not read it before signing it. Appellee's agent testified unequivocally that he asked appellant the questions shown on the insurance application form, and that he wrote down everything appellant told him in answer thereto. We find the evidence in the instant case insufficient to raise a jury question as to the fault of the insurer in causing or contributing to the misstatements contained in the application for insurance.

"There being no conflict in the evidence as to any material issue, and the evidence introduced with all reasonable deductions therefrom demanding a verdict in favor of [the insurer], the trial court did not err in thusly directing the verdict in this case." *Washington v. Inter-*

*state Fire Ins. Co.*, supra at 16.

*Judgment affirmed. Quillian, P. J., Shulman, P. J., Birdsong, Sognier and Pope, J. J., concur. McMurray, C. J., Deen, P. J., and Banke, J., dissent.*

DECIDED MARCH 16, 1984.

*Henry C. Custer*, for appellant.
*Howell Hollis*, for appellee.

DEEN, Presiding Judge, dissenting.

The direction of a verdict is only appropriate where there is no conflict in the evidence as to any material issue and the evidence introduced demands a particular verdict. While there was evidence, as found by the trial judge, that the appellant testified that he knew of some of the hospitalizations that were not disclosed, there is also further testimony by the appellee that he disclosed everything to the insurance agent and that it was given to the best of his knowledge and belief. On a motion for directed verdict taking plaintiff's statements, "I told him everything that I . . . answered all the questions that he asked me . . ." in the light most favorable to him as must be done on a motion for directed verdict, a jury could accept the latter favorable testimony and reject the former equivocal harmful testimony. A jury question seems to obtain as to this issue.

Further, the two copies of defendant's Exhibit 1 for insurance are illegible. There is no way for this court to consider the alleged limitation of the authority of the agent in the application since the type is so small and blurred that we cannot read it. Unless an appropriate limitation in the application does exist, the following three whole court cases would seem to control: *Allstate Ins. Co. v. Anderson*, 121 Ga. App. 582 (174 SE2d 591) (1970); *Reserve Life Ins. Co. v. Meeks*, 121 Ga. App. 592 (174 SE2d 585) (1970); *Chester v. State Farm Mut. Auto. Ins. Co.*, 121 Ga. App. 599 (174 SE2d 582) (1970). With the inability of this court to consider this question because of the blurred application, we should reverse the grant of the motion for directed verdict and remand the case for trial. I, therefore, respectfully dissent.

I am authorized to state that Chief Judge McMurray and Judge Banke join in this dissent.